1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3    DELIA PABON-RAMIREZ, MARCIAL
4    SANTIAGO-RUIZ,
5
6         Plaintiffs,                                    Civil No. 12-1743 (JAF)

7         v.

8    MMM HEALTH CARE, et al.,

9         Defendants.

10

11                          **OPINION AND ORDER**

12         In this employment action, Plaintiff Delia Pabón-Ramirez ("Plaintiff") brings suit,

13   alleging unlawful discrimination and retaliation in violation of numerous federal and Puerto

14   Rico laws.[1] (Docket No. 1-2.[2])  Plaintiff originally filed suit in the Court of First Instance of

15   the Commonwealth of Puerto Rico in Mayaguez.  (Docket No. 1-1.[3])  Plaintiff's complaint

16   alleges claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

17   §§ 621-634; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et

18   seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; the Health

19   Insurance Portability & Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d et seq.;

20   the Genetic Information and Nondiscrimination Act ("GINA"), 42 U.S.C. §§ 2000ff et seq.;

21   the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); and the Fourth Amendment to the United

22   States Constitution.  (Docket No. 1-2.)  Plaintiff also invokes the supplemental jurisdiction

23   of the court, bringing claims under Puerto Rico Commonwealth laws including Puerto Rico

---

[1] Plaintiff is joined in her suit by her husband, Marcial Santiago-Ruiz, and their conjugal partnership. (Docket No. 1-2 at 1.)  Because it does not affect the legal issues in this case, we refer simply to "Plaintiff."
[2] Docket No. 1-2 is the English translation of Plaintiff's complaint filed in Puerto Rico's Court of First Instance.  MMM provided this translation as Exhibit 2 to its notice of removal.  (Docket No. 1-2.)
[3] MMM attached a copy of the complaint to its notice of removal, designated as Exhibit 1. (Docket No. 1-1.)

Civil No. 12-1743 (JAF)                                                    -2-

Law 100, of June 30, 1959 ("Law 100"), 29 L.P.R.A. §§ 146 et seq.; Puerto Rico Law 80, of May 30, 1976 ("Law 80"), 29 L.P.R.A. §§ 185a et seq.; Puerto Rico Law 115, of December 20, 1991 ("Law 115"), 29 L.P.R.A. §§ 194 et seq.; Article 1802 of the Civil Code of Puerto Rico ("Article 1802"), 31 L.P.R.A. § 5141; and under Article Two of the Constitution of the Commonwealth of Puerto Rico.  (Docket No. 1-2 at 1, 12, 14.)

Defendants MMM Holdings, Inc., MMM Multi Health, Inc., MMM Healthcare Inc., d/b/a Medicare y Mucho Mas (hereinafter and collectively "MMM") removed to federal court, invoking federal question jurisdiction under 28 U.S.C. § 1331.  (Docket No. 1.) MMM then filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), requesting dismissal of some, but not all, of Plaintiff's claims.[4]  (Docket No. 10.)  Individual codefendants Rosael Jiménez Rosado ("Jiménez") and Maribeliz Mercado Lorenzo ("Mercado") (hereinafter and collectively, "individual codefendants"), Plaintiff's former supervisors at MMM, moved to join MMM's notice of removal.  (Docket No. 15.)  We granted their motion to join the removal.  (Docket No. 17.)  The individual codefendants then submitted a motion joining MMM's motion to dismiss and arguing for dismissal of most of the remaining charges against them as individuals.[5]  (Docket No. 20.)  Both motions to dismiss are unopposed.  For the following reasons, we grant in part and deny in part MMM's motion, and grant the individual codefendants' motion.

---

[4] MMM does not move for dismissal of Plaintiff's claims under the ADEA or Law 100.  (Docket No. 10 at 3.) MMM writes that while it believes these claims are time-barred, it concedes that the claims are well-pleaded.  (Docket No. 10 at 3.)  Nowhere in its motion, however, does MMM present a developed argument that these claims are time-barred.  (Id.)
[5] The individual codefendants did not move for dismissal of Plaintiff's Law 100 claims against them.  (Docket No. 20.)

1                                           **I.**

2                                    **Allegations**

3          We derive the following allegations from Plaintiff's complaint.  (Docket No. 1-2.)

4   Plaintiff was an employee of MMM from August 1, 2005, until April 2, 2007.  (Id. at 5.)  At

5   some point in 2006, Plaintiff took leave and sought treatment from the State Insurance Fund

6   ("SIF").[6]  (Id. at 6.)   Plaintiff states that she has psychiatric disorders, including major

7   severe depression, for which she received treatment during 2006 and 2007.[7]  (Id. at 4, 6, 8-

8   9.)  Plaintiff alleges that when she returned from treatment at the SIF in February 2006, she

9   was reassigned to a new position in the customer service department.  (Id. at 6-7, 10.)

10  Plaintiff's position before the reassignment was as a sales representative, for which she

11  received a monthly salary of $2,500.  (Id. at 6.)  In her new position in the customer service

12  department, Plaintiff received a much lower salary of $1,548.00 per month.  (Id.)

13         In her new position, Plaintiff alleges that she received wholly inadequate training for

14  the tasks she was asked to perform.  (Id. at 6-8.)  Plaintiff also alleges that her supervisors

15  never provided her with the manuals that describe how to make entries into the system.  (Id.

16  at 7.)   Jiménez and Mercado would allegedly stand directly over Plaintiff's desk and

17  criticize her performance.  (Id. at 7-8.)  Twelve days after Plaintiff began her new position,

18  Mercado told Plaintiff that the other employees with several years of experience in the

19  customer service center were watching her, because Plaintiff had to be at the same level of

20  proficiency as them.  (Id. at 8.)  In August 2006, Jiménez relocated Plaintiff so that Plaintiff

21  worked directly next to Jiménez's desk, separated by a glass panel and a distance of four

---

[6] The cause for Plaintiff's initial visit to the SIF is not clear.  MMM writes that "Plaintiff alleges that she reported to the [SIF] due to an accident during work hours."  (Docket No. 10.)

[7] Plaintiff states that in October 2009, the Social Security Administration diagnosed her with severe major depression that makes her unable to work.  (Docket No. 1-2 at 11.)

Civil No. 12-1743 (JAF)                                                                                  -4-

1    feet.  Jiménez would knock on the glass panel and pass notes to Plaintiff, criticizing her

2    performance.  (Id.)

3          Plaintiff alleges that in September 2006, she presented an internal complaint to the

4    Human Resources Department at MMM.  (Id. at 10.)  Plaintiff asked Michelle Ramírez, an

5    employee in MMM's Human Resources Department, to take action to correct the alleged

6    harassment and discrimination.  (Id.)  Plaintiff alleges that no corrective actions were taken.

7    (Id.)  She then sent a follow-up email to Ramírez in October 2006.  (Id.)  Then, the working

8    environment became so hostile that Jiménez allegedly told Plaintiff that she "could be

9    fired."  (Id. at 11.)  Plaintiff alleges that she was retaliated against for presenting this

10   internal complaint.  (Id. at 10.)

11         Plaintiff further alleges that following her complaint, Jiménez and Mercado

12   frequently questioned Plaintiff's medical appointments at the State Insurance Fund.  (Id. at

13   8.)  In December 2006, Plaintiff alleges that Jiménez opened two sealed envelopes

14   addressed to doctors affiliated with the State Insurance Fund.  (Id. at 9.)  Plaintiff alleges

15   that one of the envelopes, which contained a psychiatric referral, was photocopied and then

16   returned to Plaintiff.  (Id.)  Plaintiff was also denied medical leave for her appointments, and

17   forced to use vacation leave instead.  (Id.)

18         Plaintiff alleges that on April 2, 2007, she was forced to resign from MMM in what

19   she terms a "constructive resignation."  (Id. at 6.)  At the time of her resignation, she was

20   fifty-six years old.  (Id.)  Plaintiff was replaced in her position by a younger employee who

21   was twenty-seven years old.  (Id.)  On April 2, 2007, Plaintiff filed a charge of

22   discrimination before the Antidiscrimination Unit of Puerto Rico's Department of Labor

23   ("ADU") for alleged harassment and retaliation.  (Id. at 3-4.)  On April 3, 2012, Plaintiff

1   received a right-to-sue letter from ADU.  (Id. at 4.)  She filed suit in Puerto Rico's Court of

2   First Instance on July 3, 2012.  (Docket No. 1-1.)

3                                                      **II.**

4                                   **Motion to Dismiss Standard**

5   **A.      Rule 12(b)(6)**

6
7            A defendant may move to dismiss an action, based solely on the complaint, for the

8   plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

9   P. 12(b)(6).  In assessing such a motion, we "accept[] all well-pleaded facts as true, and we

10  draw all reasonable inferences in favor of the [plaintiff]."  Wash. Legal Found. v. Mass. Bar

11  Found., 993 F.2d 962, 971 (1st Cir. 1993).

12           "[A]n adequate complaint must provide fair notice to the defendants and state a

13  facially plausible legal claim."  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st

14  Cir. 2011).   In considering a complaint's adequacy, we disregard "statements in the

15  complaint that merely offer legal conclusions couched as fact or threadbare recitals of the

16  elements of a cause of action."  Id. (internal quotation marks omitted).  We then take as true

17  what remains, "[n]onconclusory factual allegations . . . even if seemingly incredible."  Id.

18  On the basis of those properly pled facts, we assess the "reasonableness of the inference of

19  liability that the plaintiff is asking the court to draw."  Id. at 13.

20  **B.      Rule 12(b)(1)**

21           A defendant may move to dismiss an action against him under Federal Rule of Civil

22  Procedure 12(b)(1) for lack of federal subject matter jurisdiction.   See Fed. R. Civ.

1  P. 12(b)(1).  "When a defendant moves to dismiss for lack of federal subject matter

2  jurisdiction, 'the party invoking the jurisdiction of a federal court carries the burden of

3  proving its existence.'"  Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citing

4  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

5        Rule 12(b)(1) provides a "large umbrella, overspreading a variety of different types

6  of challenges to subject-matter jurisdiction."  Valentin v. Hosp. Bella Vista, 254 F.3d 358,

7  362–63 (1st Cir. 2001).  A movant may base a challenge to the sufficiency of the plaintiff's

8  assertion of subject matter jurisdiction solely on the pleadings.  Id. at 363.  In that case, we

9  take the plaintiff's "jurisdictionally-significant facts as true" and "assess whether the

10  plaintiff has propounded an adequate basis for subject-matter jurisdiction."  Id. at 363; see

11  Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 197 (1st Cir. 2000).

12                                            **III.**

13                                        **Analysis**

14        MMM moves for dismissal of most, but not all, of Plaintiff's claims. (Docket

15  No. 10.) The individual codefendants join MMM's motion for dismissal, and raise

16  additional arguments that many of Plaintiff's claims should be dismissed as to them.[8]

17  (Docket No. 20.)  Plaintiff's failure to oppose means that any future objection is foreclosed

18  under the Local Rules.  See D.P.R. Loc. Civ. R. 7(b) ("Unless within fourteen (14) days

19  after the service of a motion the opposing party files a written objection to the motion,

20  incorporating a memorandum of law, the opposing party shall be deemed to have waived

---

[8] As we noted above, neither MMM nor the individual codefendants make a developed argument for dismissal of Plaintiff's Law 100 claims.  (Docket Nos. 10; 20.)

1    objection."). Nevertheless, "the mere fact that a motion to dismiss is unopposed does not

2    relieve the district court of the obligation to examine the complaint itself to see whether it is

3    formally sufficient to state a claim." <u>Vega-Encarnacion v. Babilonia</u>, 344 F.3d 37, 41 (1st

4    Cir. 2003).   We, therefore, consider whether the complaint is sufficient to survive

5    defendants' motions to dismiss.  We address the federal claims first.

6    **A.      Federal Claims**

7           **1.      ADEA**

8           MMM concedes that the ADEA claims are well-pleaded, but reserves the right to

9    investigate them further.  (Docket No. 10 at 3-4.)  The individual codefendants argue that no

10   individual liability attaches under the ADEA.   (Docket No. 20 at 7.)   For the following

11   reasons, we agree that no individual liability attaches under the ADEA and dismiss those

12   claims.  Plaintiff's claims against MMM, however, remain pending.

13          Plaintiff alleges that the defendants in this case discriminated her based on her age

14   and disability.  When she complained of this discrimination to the internal human resources

15   department, defendants allegedly retaliated against her by creating a hostile work

16   environment that led to her constructive discharge.   At this stage of the case, Plaintiff's

17   uncontested claims under the ADEA include discrimination and retaliation.   We discuss

18   Plaintiff's retaliation claims in a separate section below that analyzes her ADA and ADEA

19   retaliation claims together.

20          The individual codefendants argue that the ADEA does not provide for individual

21   liability.   This court has previously held that "First Circuit precedent supports, albeit

Civil No. 12-1743 (JAF)                                                                     -8-

1   indirectly, Movants' argument." <u>Otero-Merced v. Preferred Health Inc.</u>, 680 F.Supp.2d 388,

2   392 (D.P.R. 2010).  In <u>Otero-Merced</u>, we cited a First Circuit case that affirmed a district

3   court's finding that the ADEA does not contemplate individual liability. <u>See id.</u> (citing

4   <u>Correa-Ruiz v. Fortuño</u>, 573 F.3d 1, 7-8 (1st Cir. 2009)).  In <u>Correa-Ruiz</u>, the First Circuit

5   noted that movants' argument regarding individual liability under the ADEA had gone

6   "uncontested by plaintiffs" in the district court. <u>Id.</u> at 7 (affirming <u>Correa-Ruiz v. Calderón-</u>

7   <u>Serra</u>, 411 F.Supp.2d 41, 47 (D.P.R. 2005)).  The same is true here. Plaintiff has failed to

8   oppose the individual codefendants' argument that no individual liability attaches under the

9   ADEA.

10        Moreover, while the First Circuit has never explicitly held that individual liability is

11   precluded under the ADEA, we find this to be the most plausible reading of the statute.  In

12   <u>Fantini v. Salem State College</u>, 557 F.3d 22, 30 (1st Cir. 2009), the First Circuit held that no

13   individual liability attaches under Title VII.  <u>See id.</u> ("As held by our sister circuits we find

14   that '[t]he statutory scheme [of Title VII] itself indicates that Congress did not intend to

15   impose individual liability on employees.'") (quoting <u>Miller v. Maxwell's Intern. Inc.</u>, 991

16   F.2d 583, 587 (9th Cir. 1993)). In <u>Fantini</u>, the First Circuit also approvingly cited the

17   analysis of several circuits that the word "employer" in Title VII and the ADEA is to be

18   construed in like manner in both statutes.  <u>Id.</u> at 29 (collecting cases); <u>see also</u> <u>United States</u>

19   <u>Equal Employment Opportunity Comm'n v. AIC Sec. Investig., Ltd.</u>, 55 F.3d 1276, 1280

20   (7th Cir. 1995) (noting that the definitions of employer in the two statutes are "nearly

21   identical").

Civil No. 12-1743 (JAF)                                                              -9-

1        We also agree that the similar remedies in both Title VII and the ADEA suggest that

2    Congress did not intend to provide for liability of individual supervisors under either statute.

3    See Miller, 991 F.2d at 587 ("The liability schemes under Title VII and the ADEA are

4    essentially the same in aspects relevant to this issue; they both limit civil liability to the

5    employer.") (citing 42 U.S.C. § 2000e-5(g); 29 U.S.C. § 626(b)).   Given this clear

6    preponderance of authority, and Plaintiff's failure to contest the individual codefendants'

7    arguments, Plaintiff's claims under the ADEA will be dismissed as to the individual

8    codefendants.

9        **2.    ADA**

10       Next, we address Plaintiff's claims under the ADA.  MMM argues that Plaintiff has

11   failed to state a claim under the ADA and that she failed to exhaust administrative remedies.

12   (Docket No. 10 at 23.)  The individual codefendants join MMM's arguments and also argue

13   that the ADA does not contemplate individual liability.  (Docket No. 20 at 7.)  For the

14   following reasons, we grant the individual codefendants' motion to dismiss the ADA claims

15   as to them, but deny MMM's motion to dismiss.

16       MMM argues that Plaintiff has failed to establish a prima-facie case of disability

17   discrimination under the ADA.  (Docket No. 10 at 23.)  At the motion to dismiss stage of

18   the case, however, Plaintiff is not required to establish a prima-facie case of discrimination.

19   See Rodriguez-Reyes v. Molina-Rodriguez, ___ F.3d ___, No. 12-1647, 2013 WL 1173679,

20   at *1 (1st Cir. March 22, 2013) ("The prima facie case is an evidentiary model, not a

21   pleading standard.").  The cases that MMM cites in its motion each occurred at the end of

Civil No. 12-1743 (JAF)                                                              -10-

1   discovery, when the prima-facie model applies.  See Criado v. IBM Corp., 145 F.3d 437,

2   441 (1st Cir. 1998) (reviewing a sufficiency of the evidence claim); Lebron Torres v.

3   Whitehall Labs, 251 F.3d 236, 240 (1st Cir. 2001) (reviewing summary judgment in favor of

4   employer).

5          To survive a motion to dismiss, a Plaintiff's complaint "must contain sufficient

6   factual matter to state a claim to relief that is plausible on its face." Rodriguez-Reyes, 2013

7   WL 1173679, at *2 (quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)).

8   The elements of a prima-facie case serve not as a pleading standard but rather "as part of the

9   background against which a plausibility determination should be made." Id. (citing Grajales,

10  682 F.3d at 46).  Here, Plaintiff's complaint states a plausible claim of relief for disability

11  discrimination.  She alleges that she has been under treatment for anxiety, panic attacks, and

12  severe depression since December 2006.  (Docket No. 1-2 at 4.)  She further states that in

13  2009, the Social Security Administration found her unable to work due to her health

14  condition, which she says was made worse by her employment situation.  (Docket No. 1-2 at

15  11.)   While this diagnosis was after Plaintiff's discharge from MMM, it lends some

16  plausibility to the notion that she suffered from a disability while she was an employee at

17  MMM.  She also states that her work situation became so unbearable that she was forced to

18  resign from her job in 2007.  (Id. at 5-6.)

19         Taken together, these allegations are sufficient to state a plausible claim for relief

20  under the ADA.  To determine whether a plaintiff is disabled within the meaning of

21  12102(2)(A), the First Circuit has held that a plaintiff must suffer from a physical or mental

Civil No. 12-1743 (JAF)                                                                    -11-

1    impairment that limits a "major life activity." <u>See</u> <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 238

2    (1st Cir. 2005) (internal citations omitted). The First Circuit has also assumed, without

3    deciding, that work may constitute a major life activity.   <u>Calero-Cerezo v. U.S. Dept. of</u>

4    <u>Justice</u>, 355 F.3d 6, 20 (1st Cir. 2004).  To determine whether a person is disabled requires a

5    case-by-case analysis.  <u>Id.</u>  Whether depression may qualify as an impairment depends on

6    the depression's severity.  <u>Cassimy v. Board of Educ. of Rockford Pub. Schs.</u>, 461 F.3d 932

7    (7th Cir.2006).  Plaintiff's complaint states a claim for relief that is plausible, which is all

8    she must do at this stage.  <u>See</u> <u>Rodriguez</u>, 2013 WL 1173679, at *4 ("Although a plaintiff

9    must plead enough facts to make entitlement to relief plausible in light of the evidentiary

10   standard that will pertain at trial—in a discrimination case, the prima facie standard—she

11   need not plead facts sufficient to establish a prima facie case.").

12          MMM also argues that Plaintiff has failed to exhaust administrative remedies under

13   the ADA.  (Docket No. 10 at 23.)  This argument fails.  In support of its very cursory

14   argument, MMM cites <u>Bonilla v. Muebles Alvarez</u>, 194 F.3d 275, 278 (1st Cir. 1999).

15   <u>Bonilla</u> holds that "a claimant who seeks to recover for an asserted violation of Title I of the

16   ADA, like one who seeks to recover for an asserted violation of Title VII, first must exhaust

17   administrative remedies by filing a charge with the EEOC, or alternatively, with an

18   appropriate state or local agency, within the prescribed time limits." <u>Id.</u> at 278.  MMM then

19   states that Plaintiff "did neither; this completes our quest."   (Docket No. 10 at 23.)

20   Unfortunately for MMM, this bald assertion is contradicted by Plaintiff's complaint and

21   MMM's own motion.

Civil No. 12-1743 (JAF)                                                                      -12-

1       These documents make clear that Plaintiff did in fact file a complaint before Puerto

2   Rico's ADU on April 2, 2007.  (Docket Nos. 1-2 at 4; 10 at 5.)  Plaintiff's complaint also

3   includes an EEOC case number, suggesting that the charge was a dual filing.  (Docket

4   No. 1-2 at 4.) Plaintiff received a notice of right-to-sue letter from the ADU in April 2012,

5   and then filed her suit in Puerto Rico's Court of First Instance within the 90-day time limit.

6   (Docket Nos. 1-2 at 4; 10 at 5.)  We are puzzled why MMM would acknowledge Plaintiff's

7   ADU charge in one section of its motion and then deny it in another.  Moreover, pursuant to

8   the work-sharing agreement between the EEOC and ADU, this filing was sufficient to

9   satisfy the administrative filing requirement with the EEOC.  See Rodriguez v. Henry

10  Schein, Inc.,  813 F.Supp.2d 257, 263-264 (D.P.R. 2011) (citations omitted).  Plaintiff's

11  claims under the ADA will proceed against MMM.

12      The individual codefendants argue that Plaintiff's ADA claims should be dismissed

13  as to them, because the ADA does not contemplate individual liability.  We agree.  See

14  Reyes-Ortiz v. McConnell Valdes, 714 F.Supp.2d 234, 238 (D.P.R. 2010) ("This district,

15  however, has followed the majority of circuits that have confronted the issue and held that

16  no personal liability can attach to employees under the ADEA or the ADA.") (collecting

17  cases).

18      **3.      Retaliation under the ADEA and ADA**

19      MMM does not make any specific arguments regarding Plaintiff's retaliation claims

20  under the ADA and ADEA.  (Docket No. 10.)  We find that Plaintiff's complaint states a

21  viable retaliation claim under both statutes.  Because the standards governing retaliation

Civil No. 12-1743 (JAF)                                                    -13-

1    claims under both statutes are similar, we discuss them here together.  See generally Torres-

2    Alman v. Verizon Wireless Puerto Rico, Inc., 522 F.Supp.2d 367, 395 (D.P.R. 2007)

3    (providing helpful overview of retaliation claims under the ADA and ADEA).

4          The ADEA prohibits an employer from discriminating "against any of his employees

5    . . . because such individual . . . has opposed any practice made unlawful by this section, or

6    because such individual . . . has made a charge, testified, assisted, or participated in any

7    manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

8    Similarly, the ADA forbids discrimination "against any individual because such individual

9    has opposed any act or practice made unlawful by this chapter or because such individual

10   made a charge, testified, assisted, or participated in any manner in an investigation,

11   proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

12         Presenting an informal complaint to management is a protected activity for the

13   purposes of the ADA retaliation provision. Wright v. CompUSA, 352 F.3d 472, 477 (1st

14   Cir. 2003).  As to the ADEA, Plaintiff has also provided sufficient allegations to ground a

15   claim of retaliation. See Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)

16   ("It is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred;

17   that he acted on it; that the employer knew of the plaintiff's conduct; and that the employer

18   lashed out in consequence of it.").

19         A plaintiff need not prevail on a disability claim to assert a claim for retaliation under

20   either the ADA or ADEA. Wright, 352 F.3d at 477 (1st Cir. 2003) (ADA); Mesnick, 950

Civil No. 12-1743 (JAF)                                                                          -14-

1    F.2d at 827 ("The fact that a plaintiff eventually proves unable to establish that the employer

2    violated the ADEA in the first instance is not fatal to his prima facie case of retaliation.").

3            The First Circuit has held that "a constructive discharge can constitute an adverse

4    employment action under the ADEA." Jorge v. Rumsfeld, 404 F.3d 556, 562 (1st Cir.

5    2005).  Similarly, the "ADA supports a claim of constructive discharge."  Torres-Alman,

6    522 F.Supp.2d at 392 (quoting Rodriguez v. Loctite Puerto Rico, Inc., 967 F. Supp. 653,

7    665 (D.P.R. 1997)).

8            "Constructive discharge is a label for treatment so hostile or degrading that no

9    reasonable employee would tolerate continuing in the position." Melendez-Arroyo v. Cutler-

10   Hammer de P.R. Co., 273 F.3d 30, 36 (1st Cir. 2001) (internal quotations and citations

11   omitted).   The standard is an objective one: The conditions must be so difficult or

12   unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to

13   resign.  Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 28 (1st Cir. 2002)).  This standard

14   "does not guarantee a workplace free of the usual ebb and flow of power relations and inter-

15   office politics." Suarez v. Pueblo Intern., Inc., 229 F.3d 49, 54 (1st Cir. 2000). A

16   constructive discharge can arise from, among other things, "reassignment with significantly

17   diminished job responsibilities, or a decision causing a significant change in benefits."

18   Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  Plaintiff's retaliation claims

19   under       the      ADA      and     ADEA      will      proceed      against      MMM      only.[9]

_____

[9] As we noted above, the ADEA and ADA do not provide for individual liability.

Civil No. 12-1743 (JAF)                                                                              -15-

1       **4.     <u>Title VII</u>**

2           MMM argues that Plaintiff's complaint "advance[s] no set of facts or allegations

3    within the protection of" Title VII.  (Docket No. 10 at 19.)  We agree.  Because we find that

4    Plaintiff has failed to state a claim under Title VII, we need not reach the individual

5    codefendants' argument that no individual liability exists under Title VII. (Docket No. 20 at

6    4-6.)

7           Title VII makes it unlawful for an employer "to discriminate against any individual

8    with respect to his compensation, terms, conditions, or privileges of employment, because of

9    such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

10   "A plain reading of the statute reveals that Title VII bars only discrimination on the basis of

11   race, color, religion, sex, and national origin, and does not provide a cause of action for

12   claims of age or disability discrimination." <u>Torres-Alman</u>, 522 F.Supp.2d at 383.  Because

13   Plaintiff's complaint contains no allegation of discrimination or retaliation based on any

14   protected category of Title VII, her claims will be dismissed as to all defendants.  <u>See</u>

15   <u>Marrero v. Schindler Elevator Corp.</u>, 494 F.Supp.2d 102, 111 (D.P.R. 2007) (dismissing age

16   discrimination claim as outside the scope of Title VII); <u>see</u> <u>also</u> <u>Lee-Crespo v. Schering-</u>

17   <u>Plough Del Caribe Inc.</u>, 354 F.3d 34, 37 (1st Cir. 2003) (holding that to state a viable Title

18   VII claim, "[t]he discrimination must be based on gender or some other prohibited

19   category.").

Civil No. 12-1743 (JAF)                                                                -16-

1          **5.     Equal Pay Act**

2          MMM argues that Plaintiff has failed to state a claim under the Equal Pay Act, 29

3    U.S.C. § 206(d)(1).  (Docket No. 10 at 22.)  We agree.   The Equal Pay Act provides that no

4    covered employer shall compensate employees "at a rate less than the rate at which he pays

5    wages to employees of the opposite sex in such establishment for equal work on jobs the

6    performance of which requires equal skill, effort, and responsibility, and which are

7    performed under similar working conditions." 29 U.S.C. § 206(d)(1).  Plaintiff's complaint

8    does not even mention any allegations relating to unequal wages between employees of the

9    opposite sex.  (Docket No. 1-2.)  Therefore, the Equal Pay Act claims will be dismissed as

10   to both MMM and the individual codefendants.

11         **6.     HIPAA**

12         MMM argues that HIPAA provides no private cause of action for Plaintiff to bring a

13   claim.  (Docket No. 10 at 20.)  We construe this as an argument under Fed. R. 12(b)(1) that

14   this court lacks subject matter jurisdiction.  We agree that HIPAA does not provide a private

15   cause of action.  See Valentin Munoz v. Island Finance Corp., 364 F.Supp.2d 131, 136

16   (D.P.R. 2005) (noting that HIPAA "specifically indicates that only the Secretary of Health

17   and Human Services or other authorized state authorities may bring forth a HIPAA

18   enforcement action.") (citing 42 U.S.C. § 300gg-22); see also Miller v. Nichols, 586 F.3d 53

19   (1st Cir. 2009) (affirming district court ruling that HIPAA contains no private right of

20   action).  Plaintiff's claims under this statute will be dismissed as to all defendants.

Civil No. 12-1743 (JAF)                                                                 -17-

1        **7.    Genetic Nondiscrimination Employment Act**

2        MMM argues that Plaintiff's claims under the Genetic Nondiscrimination

3   Employment Act ("GINA ") should be dismissed because the complaint fails to state a claim

4   under GINA, and because the statute was not yet in effect at the time of Plaintiff's

5   constructive discharge.  (Docket No. 10 at 21-22.)  We agree that Plaintiff's claim does not

6   state a claim under GINA.  Under GINA, it is unlawful for an employer "to fail or refuse to

7   hire, or to discharge, any employee, or otherwise to discriminate against any employee . . .

8   because of genetic information with respect to the employee." 42 U.S.C.A. § 2000ff–1(a).

9   Nowhere in the complaint does Plaintiff even mention genetic information.  (Docket No. 1-

10  2.)  Therefore, Plaintiff's claims under GINA will be dismissed.

11       **8.    Fourth Amendment**

12       MMM argues that Plaintiff has failed to state a claim under the Fourth Amendment to

13  the United States Constitution, because her complaint does not allege any search by a

14  government actor.  We agree.  United States v. Silva, 554 F.3d 13, 18 ("The Fourth

15  Amendment's protection against unreasonable searches and seizures applies only to

16  government action and not 'to a search or seizure, even an unreasonable one, effected by a

17  private individual not acting as an agent of the Government.'") (quoting United States v.

18  Jacobsen, 466 U.S. 109, 113 (1984)) (internal citations omitted).  Plaintiff's claims under

19  the Fourth Amendment will be dismissed as to all defendants.

1  **B.      Puerto Rico Law Claims**

2         We now turn to Plaintiff's Puerto Rico law claims.  For the following reasons, we

3  find that Plaintiff has surviving claims under Law 100 and the Puerto Rico Constitution.

4         **1.      Law 100**

5         Neither MMM nor the individual codefendants make a developed argument in favor

6  of dismissing Plaintiff's Law 100 claims.  Law 100 "prohibits employment discrimination

7  based on a variety of factors, including age." Baralt v. Nationwide Mut. Ins. Co., 251 F.3d

8  10, 15 (1st Cir. 2001).  It offers a "significantly more favorable" standard to plaintiffs than

9  does the ADEA. Cardona Jimenez v. Bancomercio de Puerto Rico, 174 F.3d 36, 42 (1st Cir.

10  1999).  In light of our holding above that Plaintiff has adequately pleaded a claim under the

11  ADEA, and because defendants have not contested these claims, Plaintiff's claims under

12  Law 100 will proceed against MMM and the individual codefendants. See Otero-Merced v.

13  Preferred Health Inc., 680 F.Supp.2d at 392 (D.P.R. 2010) (finding that individual liability

14  does exist under Law 100) (collecting cases); accord Miro Martinez v. Blanco Velez Store,

15  Inc., 393 F.Supp.2d 108, 115 (D.P.R. 2005) (same).

16        **2.      Law 80**

17         MMM argues that Plaintiff's claims under Law 80 are time-barred.  (Docket No. 10

18  at 6-11.)  The individual codefendants argue that Law 80 does not provide for individual

19  liability.  (Docket No. 20 at 8.)  Because we agree that Plaintiff's Law 80 claims are time-

20  barred and dismiss on those grounds, we do not reach the individual codefendants'

21  arguments regarding individual liability.

Civil No. 12-1743 (JAF)                                                      -19-

1    Law 80 provides a severance pay as the exclusive remedy for covered employees

2    "contracted without a fixed term, who is discharged from his/her employment without just

3    cause." Otero–Burgos v. Interamerican Univ., 558 F.3d 1 (1st Cir.2009) (quoting 29

4    L.P.R.A. § 185a). In cases in which the statute applies, the employer is forced to pay the

5    discharged employee a "mesada," or severance payment, calculated by a formula contained

6    in the statute. Id. (citing § 185a).

7    The statute of limitations for claims under Law 80 is three years. See 29 L.P.R.A.

8    § 185l ("The rights granted hereunder shall prescribe after the lapse of three years from the

9    effective date of the discharge."). Plaintiff alleges that she was constructively discharged on

10   April 2, 2007. (Docket No. 1-2 at 5.)   She then filed her claims in Puerto Rico's Court of

11   First Instance on July 3, 2012. (Id. at 17.)   Therefore, unless the statute of limitations was

12   tolled, her claim is clearly time-barred.

13   While the filing of an extrajudicial complaint with the ADU or EEOC may interrupt

14   the statute of limitations for certain analogous employment discrimination statutes, see

15   Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 62 (1st Cir. 2005),

16   we are aware of no cases in which an age and disability discrimination charge has been held

17   to interrupt the statute of limitations for a Law 80 claim.   Moreover, because "tolling

18   provisions [are] interpreted restrictively against the person invoking their protection," strict

19   conditions must be met for tolling to apply.   Nieves-Vega v. Ortiz-Quinones, 443 F.3d 134,

20   137 (1st Cir. 2006) (internal quotations and citations omitted).   The extrajudicial claim must

21   be "identical" to the claim actually filed in court, seek the same form of relief, be based on

1    the same facts, and be asserted against the same defendants as the subsequent lawsuit.  Id.

2    (internal citations omitted).

3          Plaintiff has failed to provide any argument why her extrajudicial claim satisfied any

4    of these requirements with respect to her Law 80 claim.  Therefore, her Law 80 claims will

5    be dismissed. See 5 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL

6    PRACTICE AND PROCEDURE § 1226 (3d ed. 1998 ) (noting that "the current trend in the cases

7    is to allow [statute of limitations] to be raised by a motion to dismiss under Rule 12(b)(6)

8    when the defect appears on the face of the complaint.").

9          **3.    Law 115**

10         MMM argues that Plaintiff has failed to state a prima-facie case of retaliation under

11   Law 115.  (Docket No. 10 at 11-12.)  We agree and dismiss on those grounds.  Therefore,

12   we do not reach the individual codefendants' argument that Law 115 does not provide for

13   individual liability.  (Docket No. 20 at 6-7.)

14         Law 115 prohibits employers from discriminating against employees for "offer[ing]

15   or attempt[ing] to offer, verbally or in writing, any testimony, expression or information

16   before a legislative, administrative or judicial forum in Puerto Rico."  Uphoff Figueroa v.

17   Alejandro, 597 F.3d 423, 432-33 (2010) (quoting 29 L.P.R.A. § 194a(a)).  To state a viable

18   claim under Law 115, "[e]mployees must establish they engaged in activity protected under

19   Law 115 and then suffered discrimination at work." Id. (citing Velez v. Janssen Ortho, LLC,

20   467 F.3d 802, 809 (1st Cir.2006)).

Civil No. 12-1743 (JAF)                                                                        -21-

1          Here, Plaintiff has failed to show that she engaged in conduct protected under Law

2   115.  Law 115 does not list an employee's internal complaint, such as the one that Plaintiff

3   made to MMM's human resources department, as conduct protected by the statute.  See 29

4   L.P.R.A. § 194a(a).  Courts have consistently applied this straightforward reading of Law

5   115, finding that internal complaints do not fall within the protection of the statute.  See

6   Hoyos v. Telecorp Commc'ns., 405 F.Supp.2d 199, 207 (granting summary judgment to

7   employer where employee had not "offered or attempted to offer testimony or information

8   either to a legislative, administrative, or judicial forum."); see also Villanueva-Batista v.

9   Doral Financial Corp., 357 Fed. App'x 304, 2009 WL 4936396, at *2 (1st Cir. Dec. 23,

10  2009) ("Law No. 115 protects only 'testimony, expression or information . . . before a

11  legislative, administrative, or judicial forum,' not internal complaints") (quoting 29

12  L.P.R.A. § 194a).  Because Plaintiff has failed to allege that she offered or attempted to

13  offer testimony or information to a legislative, administrative or judicial forum, her claims

14  under Law 115 will be dismissed as to all defendants.

15       **4.    Article 1802**

16       MMM argues that Plaintiff cannot bring claims under Article 1802, because her

17  injuries are covered by specific employment statutes.[10]  (Docket No. 10 at 18.)  We agree.

18  Courts in this district have repeatedly held that,

19       [t]o the extent that a specific labor law covers the conduct for which a
20              plaintiff seeks damages, [s]he is barred from using that same
21              conduct to also bring a claim under Article 1802. An additional

---

[10] MMM also argues that Plaintiff's claims under Article 1802 are time-barred.  (Docket No. 10 at 16-18.)  We need not address this argument in light of our dismissal on the alternative grounds urged by MMM.

Civil No. 12-1743 (JAF)                                                                    -22-

1    claim under Article 1802 may only be brought by the
2    employee-plaintiff if it is based on tortious or negligent conduct
3    distinct from that covered by the specific labor law(s) invoked.

4

5    Medina v. Adecco, 561 F.Supp.2d 162, 175–76 (D.P.R.2008) (quoting Rosario v. Valdes,

6    No. 07–1508, 2008 U.S. Dist. LEXIS 13113, at *3–6, 2008 WL 509204 (D.P.R. Feb. 21,

7    2008)).

8          Plaintiff has brought claims under various employment statutes and Article 1802, but

9    with respect to her Article 1802 tort claims, has failed to "allege any independent basis to

10   support such claims." Rivera–Melendez v. Pfizer Pharm., Inc., 747 F.Supp.2d 336, 339

11   (D.P.R. 2010).  Thus, any claims under Article 1802 must be dismissed as to all defendants.

12   See id. (collecting cases); see also Rivera-Cartagena v. Wal-Mart Puerto Rico, 767

13   F.Supp.2d 310, 320 (D.P.R. 2011) (same).

14         **5.    Puerto Rico Constitution**

15         MMM argues that Plaintiff has failed to state a claim under the Constitution of the

16   Commonwealth of Puerto Rico ("P.R. Constitution") and that these claims are time-barred.[11]

17   (Docket No. 10 at 19-20.)  This section of MMM's motion is so undeveloped that it is likely

18   waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to

19   in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

20   deemed waived.").

21         The only legal authority that MMM cites in this section is Rivera-Cartagena v. Wal-

22   Mart, 767 F.Supp.2d 310, 323 (D.P.R. 2011).  If anything, that case undermines MMM's

_____
[11] The individual codefendants do not raise any additional arguments in favor of dismissing Plaintiff's claims under the P.R. Constitution.  (Docket No. 20.)

1   arguments that Plaintiff has failed to state a claim.  In Rivera-Cartagena, the court discusses

2   a number of cases in which the Puerto Rico Supreme Court has given expansive

3   interpretations to the dignity and privacy clauses of the P.R. Constitution in the employment

4   context.  See Rivera-Cartagena, 767 F.Supp.2d at 323 (collecting cases).  The court in

5   Rivera Cartagena held that an unjust dismissal claim—even absent any allegations of

6   discrimination based on a specific protected category mentioned in Article II, Section 1,[12]

7   was sufficient to survive a motion to dismiss.  Id. (noting that "the right to employment has

8   been repeatedly recognized by the Puerto Rico Supreme Court as a fundamental right and

9   part of the right to dignity protected under the P.R. Constitution.") (citing Arroyo v. Rattan

10  Specialties, Inc., 17 P.R. Offic. Trans. 43 (P.R.1986)).  Thus, we reject MMM's unsupported

11  argument that Plaintiff has failed to state a claim under the P.R. Constitution.

12          MMM's timeliness argument fares no better.  MMM argues that applying the one-

13  year statute of limitations from Article 1802, Plaintiff's claims under the P.R. Constitution

14  are time-barred.  (Docket No. 10 at 19.)  But MMM provides no argument—none—why we

15  should apply this one-year statute of limitations.  This argument is also waived.  Zannino,

16  895 F.2d at 17; see also Skidmore v. American Airlines, Inc., 198 F.Supp.2d 131, 140 n.14

17  (D.P.R. 2002) (declining to decide "novel area of law" whether employment discrimination

18  claims under the P.R. Constitution should borrow statute of limitations from Law 100 or

19  Article 1802).  Plaintiff's claims under the P.R. Constitution will be allowed to proceed.

_____

[12] Article II, Section 1 of the Bill of Rights of the P.R. Constitution states: "The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas."

Civil No. 12-1743 (JAF)                                                    -24-

1                                          **IV.**

2                                    <u>**Conclusion**</u>

3          For the foregoing reasons, MMM's motion to dismiss is hereby **GRANTED IN**

4    **PART AND DENIED IN PART.**  (Docket No. 10.)  The individual codefendants' motion

5    to dismiss is **GRANTED**.  (Docket No. 20.)  Plaintiff's discrimination and retaliation claims

6    under the ADA and ADEA remain pending against MMM only.  Against both MMM and

7    the individual codefendants, Plaintiff has surviving claims under Law 100 and the P.R.

8    Constitution.  All other claims are hereby **DISMISSED WITH PREJUDICE**.

9          **IT IS SO ORDERED.**

10         San Juan, Puerto Rico, this 29th day of April, 2013.

11                                    s/José Antonio Fusté
12                                    JOSE ANTONIO FUSTE
13                                    United States District Judge