UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| DELIA PABON-RAMIREZ, MARCIAL SANTIAGO-RUIZ, CONJUGAL PARTNERSHIP SANTIAGO-PABON,<br><br>Plaintiffs,<br><br>v.<br><br>MMM HEALTHCARE, INC., MMM MULTI HEALTH, INC., MMM HOLDINGS, INC., AVETA INC., ROSAEL JIMENEZ-ROSADO, JOHN DOE, CONJUGAL PARTNERSHIP DOE-JIMENEZ, MARIBELIZ MERCADO-LORENZO, MIKE DOE, CONJUGAL PARTNERSHIP DOE-MERCADO, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY,<br><br>Defendants. | Civil No. 12-1743 (JAF) |

**OPINION AND ORDER**

Delia Pabón-Ramírez ("Pabón"), Marcial Santiago-Ruiz, and the Conjugal Partnership Santiago- Pabón (collectively "Plaintiffs") are suing MMM Healthcare, Inc.; MMM Multi Health, Inc.; MMM Holdings, Inc.; Aveta Inc.; Rosael Jiménez-Rosado ("Jiménez"); John Doe; Conjugal partnership Doe-Jiménez; Maribeliz Mercado-Lorenzo; Mike Doe; Conjugal Partnership Doe-Mercado; ABC Insurance Company; and DEF Insurance Company (collectively "Defendants") for many causes of action centered upon workplace discrimination. (Docket No. 1.) We have already entered partial judgment in the case, and Defendants now ask for another partial summary judgment. (Docket No. 62.) For the reasons stated below, we grant Defendants' motion for partial summary judgment in full.

## I.

## **Procedural History**

On July 3, 2012, Plaintiffs filed an action against Defendants in the Superior Court of Puerto Rico alleging wrongful termination and/or constructive discharge under Puerto Rico Act No. 80, 29 LPRA § 185a et seq.; for age discrimination under Puerto Rico Act Number 100, 29 LPRA § 146 et seq. and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §141 et. seq.; for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.; for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et. seq.; for unspecified damages under Article 1802 of Puerto Rico's Civil Code and Article II §1 of the Constitution of Puerto Rico; and for retaliation under Puerto Rico's Act 115, 29 LPRA § 194, et. seq.  Plaintiffs also asserted federal claims under the Fourth Amendment of the United States Constitution and its Bill of Rights; the Equal Pay Act of 1963, 29 U.S.C. § 206d; the Health Insurance Portability and Accountability Act ("HIPAA"), 42 USC 261 et als.; and under the Genetic Information Nondiscrimination Act ("GINA").  On September 7, 2012, Defendants removed this case from the Puerto Rico Superior Court to federal court.  (Docket No. 1.)

On April 29, 2013 and June 26, 2013, we entered partial judgments dismissing many of Plaintiffs' claims.  Plaintiffs' discrimination and retaliation claims under the ADA and ADEA remained pending against MMM only.  Plaintiffs' claims under Law 100 survived against both MMM and the individual co-defendants.  We dismissed all other claims.  (Docket Nos. 29, 30, 43, 45.)

On January 10, 2014, Defendants filed the instant motion for partial summary judgment with an accompanying statement of facts. (Docket Nos. 62, 63, 79.) They argued that Plaintiffs' claims under the ADA must be dismissed because Pabón failed to exhaust her required administrative remedies. (Docket No. 62.) They also argued that MMM Holdings, MMM Multi Health and Mercado were not included in the Antidiscrimination Unit ("ADU") charge, and that therefore Plaintiff failed to exhaust administrative remedies as to them and failed to toll the one year statute of limitations applicable to any and all claims against them under Act 100. Finally, they argued that MMM Multi Health was never Pabón's employer, and that therefore all claims against that entity should be dismissed. (Docket No. 62.)

On February 5, 2014, Plaintiffs filed a response as well as their own statement of facts. (Docket No. 80, 81, 83.) Defendants replied on February 24, 2014. (Docket Nos. 102, 103.) Defendants opposed Plaintiffs' statement of facts on February 25, 2014. (Docket No. 104.)

## II.

## Facts

When considering a summary judgment motion, we must view all facts in the light most favorable to the non-moving party. Therefore, to the extent that any facts are disputed, the facts set forth below represent Plaintiffs' version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where Plaintiffs' asserted facts do not properly comply with Local Rules 56(c) and (e), we deem Defendants' properly-supported statements as admitted. See Cosme-Rosado v.

Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of facts admitted if opposing party fails to controvert properly). Local Rule 56(c) states that:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

Local Rule 56(c). And Local Rule 56(e) states that:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Local Rule 56(e). In their opposition to Defendants' statement of material facts, Plaintiffs completely fail to comply with these rules. Their opposition does not contain a single record citation. (Docket No. 81.) In their statement of facts, Plaintiffs again fail to comply with these rules, and do not once cite a specific page or paragraph in the identified record material. Instead, for most of the asserted facts, they cite generally to

Pabón's affidavit for broad statements, such as that "Plaintiff was exposed to humiliations" or that "Plaintiff was discriminated by the Defendant." (Docket No. 83.) This is insufficient.

Although the court has no independent duty to search the record, we find it easiest to simply look at the exhibits which were referenced in Defendant's motion, as they provide the clearest picture of what occurred and what allegations were made during the course of Pabón's employment and complaint process.

Pabón began working for MMM Healthcare on August 1, 2005, as a sales representative, earning a salary of twenty-thousand (20,000) dollars annually. (Docket Nos. 63 at 2; 63-1.) We take her allegations of workplace discrimination from the complaint that she filed with the Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources ("ADU"). In that complaint, Pabón made the following allegations: She had an on-the-job accident in which she hurt the ligaments of her ankle, and for which she received treatment from the State Insurance Fund. Because of this accident, she was transferred to a position as a customer service representative so that she could work sitting down. In her new position, the average age was twenty-seven years, but she was the eldest employee at fifty-six. She alleges that her supervisor, Jiménez, was "very hostile, impatient and negative" towards her when she had problems, and that Jiménez would not allow her to ask questions of her coworkers. She alleged that the supervisor "constantly humiliated me telling me how bad I was doing my work." Pabón also said in her ADU complaint that breaks had been cancelled due to increased call volume, and she also complained that she felt uncomfortable because she needed to ask

permission to use the bathroom, and because she could not use the bathroom if one of her other coworkers was already in there. (Docket No. 88-2.) She alleges that she complained on April 19, 2006, May 17, 2006, and September 13, 2006, to the Operations Manager, Julio Gracia, and to Michelle Ramírez ("Ramírez") in Human Resources about Jiménez's behavior. (Docket Nos. 88-2; 112-3.) Pabón alleged that Jiménez was pressuring her to leave her job. (Docket No. 88-2.) In her September letter to Ramírez, Pabón wrote that,

> I've been keeping record of the times [Jiménez] corrects me, coaches me, and scolds me and it is already overwhelming and overburdening me….The last thing she has done, besides constantly overwhelming me, is that she changed me from the location where I was and moved me to be in front of her desk.

(Docket No. 112-3.) The desk Pabón referenced was next to Jiménez and had a glass wall, through which Jiménez would call her attention when she made a mistake. In November 2006, Pabón received a negative job evaluation. She also received one warning for not presenting the card of the State Insurance Fund to Jiménez in order to verify her medical appointments, and a second warning for being disrespectful by calling Jiménez "obstinate." Pabón felt that these warnings were in reprisal for her earlier complaints to operations and human resources. The day after this negative work evaluation, Pabón reported to the State Insurance Fund that she was suffering work-related emotional problems. The Fund's physician allegedly told her that she was suffering from "mobbing." After this, Pabón decided that she was being harassed by Jiménez because of her age. At this point, Pabón met with a lawyer who wrote to MMM to cease and desist the harassment by Jiménez. Pabón alleges that this helped at first, but

that Jiménez's behavior worsened again two months later. On March 13, 2007, Pabón alleged that one of the State Insurance Fund doctors placed her on rest due to her physical and emotional exhaustion. (Docket No. 88-2.)

On April 2, 2007, Pabón resigned as an employee of MMM Healthcare, alleging that this was necessary for her health. (Docket Nos. 63 at 2; 88-1; 88-2.) On April 9, 2007, Pabón filed a charge of discrimination with the ADU under case number uadau70382cm/16H200700748c. (Docket No. 62 at 2.) She checked the causes of discrimination as "edad/age" and "otra/other: acoso moral/psyc" ("other: moral/psychological harassment"). (Docket No. 88-2 at 2.) Her claim was made against MMM Health Care and against her supervisor, Jiménez. (Docket No. 88-2.) On June 7, 2007, the ADU notified MMM Health Care that Pabón had filed a discrimination charge based on both Law 100 and the ADEA, and also notified Jiménez that Pabón had filed a discrimination charge against her individually under both Law 100 and the ADEA. On June 11, 2007, Pabón requested that Law 115, or the "Retaliation Law" be included in the investigation. (Docket No. 112-2.)

Pabón began psychiatric treatment on October 19, 2007 for depressive disorder. (Docket No. 117-2.) The Social Security Administration later found that Pabón had become entitled to monthly disability benefits beginning October 2007, because she had become disabled on April 2, 2007. (Docket No. 80-10.)

On June 15, 2010, the ADU notified Pabón that it had investigated her case under Law No. 100 and the ADEA, and that "NO PROBABLE CAUSE of discrimination in employment under the cause of age has been determined." (Docket No. 88-6.) Pabón

requested reconsideration, which was granted.  (Docket Nos. 88-7, 8, 9.)  On August 10, 2010, Pabón filed a document in support of her request for reconsideration before the ADU.  (Docket No. 63; Docket No. 88-10.)  On February 23, 2012, Lourdes V. Gandarilla ("Gandarilla"), an attorney from the Bureau of Legal Affairs of the Puerto Rico Department of Labor, wrote Pabón that "the facts constituting discrimination due to age do not exist."  She stated that "At the most perhaps there are allegations of 'labor harassment' or 'mobbing,'" and that Pabón could consult an attorney about those allegations.  (Docket Nos. 62 at 5; 88-11.)  On April 3, 2012, the Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights, adopting the findings of the ADU and closing its file on Pabón's charges.  (Docket No. 63-13.)

## III.

## Analysis

Defendants argue that many of Plantiffs' claims must be dismissed for failure to exhaust required remedies, for failure to toll the statute of limitations, or because Plaintiffs named the wrong entity.  For the reasons below, we agree.

**A.     Pabón failed to exhaust her required administrative remedies under the ADA**

A plaintiff who wants to recover for an asserted violation of the ADA, "first must exhaust administrative remedies by filing a charge with the EEOC, or alternatively, with an appropriate state or local agency, within the prescribed time limits….This omission, if unexcused, bars the courthouse door."  Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999); see also Thornton v. United Parcel Service, Inc., 587 F.3d 27, 31 (1st Cir. 2009).  The scope of a subsequent civil action is limited by the administrative

charge filed "and the investigation which can reasonably be expected to grow out of that charge." Thornton, 587 F.3d at 31 (internal citation omitted).  By this 'scope of the investigation rule,' the court means that plaintiffs can press a claim "where the factual statement in [the] written charge should have alerted an agency to an alternative basis of discrimination, and should have been investigated." Davis v. Lucent Technologies, Inc., 251 F.3d 227, 233 (1st Cir. 2001) (internal citations omitted).

Pabón filed a charge of discrimination with the ADU on April 9, 2007, alleging violations of both Law 100 and the ADEA.  (Docket No. 62 at 2; Docket No. 112-2.)  She later added a violation of Law 115, or the "Retaliation Law" on June 11, 2007.  (Docket No. 111-2.)  She checked the causes of discrimination as "edad/age" and "otra/other: acoso moral/ psyc" ("other: moral/psychological harassment").  (Docket No. 88-2 at 2.)  In her attached statement of facts, she alleged that, after a workplace accident in which she hurt the ligaments in her ankle, she was placed in a group where the average age was twenty-seven years, and where she was the eldest at fifty-six years old.  She alleges that her supervisor was "very hostile, impatient, and negative" towards her and "constantly humiliated me telling me how bad I was doing my work." (Docket No. 88-2 at 4-5.)  She received a negative evaluation of her work, as well as two warnings – one for failure to show a card of her Insurance Fund appointments and another for calling her supervisor "obstinate"—and she alleges that these were done in retaliation for her internal complaints. (Docket No. 88-2 at 6.)  Pabón wrote in her statement of facts to the ADU that "I arrived at the conclusion that the sup. had been humiliating, harassing me and making me feel inefficient so that I would leave the job because I am the oldest of the

group and apparently she does not feel comfortable with me in the group." (Docket No. 88-2 at 7.) She also complained in the statement of facts that she was moved to a desk next to her supervisor's desk with only glass between them. (Docket No. 88-2 at 7.) Finally, Pabón complained that breaks were cancelled due to the "increase of calls that were entering," and complained because she "felt uncomfortable because I had to ask permission if I needed to go to the bathroom" and needed to wait if her coworkers were already in the bathroom. (Docket No. 88-2 at 7.)

The scope of an investigation that could reasonably be expected to grow out of this charge does not include an investigation of ADA violations. The written charges would not have reasonably alerted the agency to a basis of discrimination based upon disability. See Thornton, 587 F.3d at 31; Lucent Technologies, Inc., 251 F.3d at 233. Therefore, we dismiss Plaintiffs' claims under the ADA.

**B.    Plaintiff failed to exhaust administrative remedies as to MMM Holdings, MMM Multi Health, and Mercado, and also failed to toll the one-year statute of limitations applicable to claims under Act 100**

We have already discussed the need to exhaust administrative remedies before bringing a claim under the ADA. Likewise, under the ADEA, "no civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d)(1). Pabón never mentioned Mercado in her complaint to the ADU, either on the cover sheet or in her extensive statement of facts. (Docket No. 88-2.) Mercado is not mentioned until Pabón's local complaint, filed on July 3, 2012. (Docket No. 1-1.) Therefore, Pabón failed to exhaust administrative remedies as

to Mercado.  Pabón also filed to toll the one year statute of limitations against Mercado under Law 100, since the Supreme Court of Puerto Rico has held that the one year statute of limitations found in Article 1868 of the Puerto Rico Civil Code also applies to Law 100 claims.  Olmo v. Young & Rubicam of P.R., Inc., 110 P.R. Dec. 740 (P.R. 1981).

Pabón filed her ADU complaint against MMM Health Care and Jiménez. She does not specifically list MMM Holdings or MMM Multi Health.  (Docket No. 88-2 at 2.)  For the reasons in Section C supra, we dismiss MMM Multi Health as a party.  We also dismiss MMM Holdings as a party.  The submission of an administrative claim "gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation."  Thornton, 587 F.3d at 31.  Pabón's complaint did nothing to alert MMM Holdings to a potential case of workplace discrimination.  If Pabón can show that MMM Holdings is an alter ego of MMM Health Care or that MMM Holdings has assumed legal liability for any monetary damages against MMM Health Care, then Pabón should bring any such documentation to the attention of the court.  Without any such showing, Pabón failed to exhaust administrative remedies against MMM Holdings.  Pabón also filed to toll the one year statute of limitations against MMM Holdings under Law 100.  See Olmo v. Young & Rubicam of P.R., Inc., 110 P.R. Dec. 740 (P.R. 1981).

Therefore, we dismiss MMM Holdings from the case.

**C.     MMM Multi Health was never Pabón's employer**

MMM Multi Health registered with the Commonwealth of Puerto Rico on November 7, 2013.  The incorporation document makes no mention of taking on the

liabilities of MMM Healthcare. (Docket No. 88-12.) Because the alleged discrimination occurred before April 2007 (Docket Nos. 62 at 2; 88-1; 88-2), we dismiss MMM Multi Health as a party.

## IV.

## Conclusion

For the foregoing reasons, the Defendants' motion for partial summary judgment (Docket No. 62) is **GRANTED**. Plaintiffs' claims under the ADA are **DISMISSED**. Plaintiffs' claims against Mercado, MMM Holdings, and MMM Multi Health are also **DISMISSED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 29th day of April, 2014.

                                                          S/José Antonio Fusté  
                                                          JOSE ANTONIO FUSTE  
                                                          U. S. DISTRICT JUDGE