UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

DELIA PABON-RAMIREZ, et al.,

    Plaintiffs,

v.

MMM HEALTHCARE, INC., et al.,

    Defendants.

Civil No. 12-1743 (JAF)

**OPINION AND ORDER**

Delia Pabón-Ramírez ("Pabón-Ramírez" or "Plaintiff"), Marcial Santiago-Ruiz, and the Conjugal Partnership Santiago- Pabón (collectively "Plaintiffs") filed suit against many defendants for many causes of action centered upon workplace discrimination. (Docket No. 1.) Many of these defendants and causes of action have since been dismissed. (Docket No. 121.) In light of these developments, we ordered the parties to clarify which parties and causes of action remained outstanding. (Docket No. 122.) They complied with this order on May 5, 2014. (Docket No. 125.) Currently, Pabón-Ramírez[1] is suing MMM Healthcare, Inc. ("MMM") for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). Pabón-Ramírez is also suing both MMM and Rosael Jiménez-Rosado ("Jiménez-Rosado") (collectively "Defendants") for age discrimination under Puerto Rico Law No. 100 ("Law 100"). 29 L.P.R.A. § 146. (Docket No. 125.)

---

[1] The May 5, 2014, Joint Motion states: "Come now Plaintiff, Delia Pabón Ramírez and Codefendants MMM Healthcare Inc., d/b/a Medicare y Mucho Más and Rosael Jiménez Rosado […]." We, therefore, assume that these are the only parties which remain in the litigation.

Currently before us is a motion for summary judgment filed by the Defendants on May 9, 2014. (Docket Nos. 131, 132.) For the reasons below, we grant Defendants' motion for summary judgment.

## I.

## **Facts**

When considering a summary judgment motion, we must view all facts in the light most favorable to the non-moving party. Therefore, to the extent that any facts are disputed, the facts set forth below represent Plaintiff's version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where Plaintiff's asserted facts do not properly comply with Local Rules 56(c) and (e), we deem Defendants' properly-supported statements as admitted. See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of fact admitted if opposing party fails to controvert properly).

Local Rule 56(c) states that:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

Local Rule 56(c). And Local Rule 56(e) states that:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Local Rule 56(e).

Plaintiff does not admit, deny, or qualify any of the facts supporting the motion for summary judgment. See Local Rule 56(c). Because Plaintiff failed to properly controvert Defendants' statement of facts, we deem the Defendant's statement of facts as admitted in their entirety. See Cosme-Rosado, 360 F.3d at 45.[2]

Pabón-Ramírez began working for MMM as a sales representative on August 1, 2005, at which time she received a copy of human resources policies and procedures. (Docket No. 132 at 2.) As a sales representative, Pabón-Ramírez was outside the office, with little supervision, visiting prospective clients. The job required her to walk, go up and down stairs, and get in and out of her car. (Docket No. 132.) On September 19, 2005, while performing her job duties, she turned her left ankle and ligaments. (Docket No. 132 at 3.) She went to the State Insurance Fund Corporation of Puerto Rico ("SIF"), which ordered medical treatment with a leave of absence. (Docket No. 132 at 3.) On

---

[2] Counsel must always heed the rules of the court. Failing to controvert the opposing parties' statement of facts has grave consequences.

February 1, 2006, the SIF authorized Pábon-Ramírez to continue treatment for her work-related accident while working again for MMM. (Docket No. 3.) She requested an accommodation from MMM so that she could work during treatment, namely requesting a position that did not require walking. (Docket No. 132 at 3-4.)

On February 17, 2006, Pabón-Ramírez was offered and accepted a change of position to "Customer Service Representative – Inbound." (Docket No. 132 at 4.) The new position did not require her to walk as part of her duties. (Docket No. 132 at 4.) She began the new position on February 13, 2006. (Docket No. 132 at 4.) Her job duties as a customer service representative were to provide customer service over the phone to current MMM clients. (Docket No. 132 at 4.) During the first two weeks, Pábon-Ramírez trained by observing and listening as other employees performed their duties. (Docket No. 132 at 5.) From February 22, 2006, until March 8, 2006, Pabón-Ramírez received training for the position in the San Juan offices of MMM. (Docket No. 132 at 5.)

Jiménez-Rosado was Pabón-Rámirez' supervisor in the Customer Service Department. (Docket No. 132 at 5.) Jiménez-Rosado's job responsibilities included tracking daily call center operational processes and goals; coaching and evaluating employees; analyzing results of employee's performances; assuring the quality of service; handling complex customer service issues; and managing administrative affairs, such as attendance, punctuality, and payroll. (Docket No. 132 at 6.) Meribeliz Mercado ("Mercado") was assigned to mentor Pabón-Ramírez. (Docket No. 132 at 6.) Among the usual procedures of the customer service department were "Coachings, One-on-One's

and Mentors Evaluations." (Docket No. 132 at 7.) These were used to tell each employee "what they were doing correctly or incorrectly and identifying areas for improvement." (Docket No. 132 at 8-9.) Jiménez-Rosado provided one-on-one sessions and coaching with Pabón-Ramírez, but also with younger employees, including Norma Rodríguez and Miguel Vega. (Docket No. 132 at 7-8.) All customer services representatives were subject to monitoring of calls to verify quality of MMM service and to identify customer service areas in need of attention, with the idea that these would be used to improve future delivery of service. (Docket No. 132 at 8.)

On June 16, 2006, the Human Resources Department of MMM conducted an internal investigation "based on Jiménez's style of supervision." (Docket No. 132 at 9.) Pabón-Ramírez was interviewed as part of this investigation, although she had not filed a complaint about Jiménez-Rosado. (Docket No. 132 at 9.) That day, Pabón-Ramírez filled an interview questionnaire, reporting that she felt comfortable in her new position. She admitted that she felt pressure in her new job because she had to learn many new things and was expected to know about areas that were new to her. (Docket No. 132 at 9-10.) In the questionnaire, she did not complain about age discrimination or any other kind of discrimination. (Docket No. 132 at 10.) Pabón-Ramírez did recommend in the questionnaire that her supervisor be better trained on how to work with, support, and help train new employees. (Docket No. 132 at 10.) Other younger employees also gave statements that Jiménez-Rosado needed to improve her supervision skills and treated them negatively. (Docket No. 132 at 10.)

On or about July 18, 2006, Pábon-Ramírez received and discussed her first performance appraisal. She met expectations, but agreed that she needed to improve her decision-making skills and that she confronted problems handling difficult calls. (Docket No. 132 at 10.) As part of the action steps in the performance appraisal, Pabón-Ramírez agreed to move to a cubicle closer to her supervisor for easier access. (Docket No. 132 at 10.) She was first moved to a different cubicle by the exit until August 2006. Then, from August 30, 2006, until December 2006, she was relocated to a cubicle next to Jiménez-Rosado, separated by a glass. (Docket No. 132 at 11.) Pabón-Ramírez was told that she was being moved so that she would be closer to her supervisor in case she had doubts. (Docket No. 132 at 11.)

On September 16, 2006, Pabón-Ramírez sent a letter to Ramírez complaining about Jiménez-Rosado, although she did not allege any discrimination, based either on age or on a different protected category. (Docket No. 132 at 12.) In the letter, she objected to Jiménez-Rosado's constant supervision, corrections, and coaching. Pabón-Ramírez said she thought that much supervision meant they intended to terminate her employment. (Docket No. 132 at 12.) In this letter, Pabón-Ramírez also objected to being moved closer to Jiménez-Rosado. (Docket No. 132 at 12.) On November 3, 2006, Pabón-Ramírez met with Ramírez and signed a statement detailing the conversation they had. (Docket No. 132 at 16.) In this meeting, Pabón-Ramírez did not refer to her age being an issue, to age bias, or to any type of discrimination due to a protected category. (Docket No. 132 at 17.) In the meeting, she objected to the coaching and claimed she was used to working with minimal supervision. She also said that Jiménez-Rosado was

not friendly with her the way she was friendly with other employees. She also complained that if she had questions or doubts, she had to stand up and wait for Jiménez-Rosado to finish whatever she was doing before asking for her help. (Docket No. 132 at 16-17.)

By November 2006, Pabón-Ramírez was still receiving treatment through the SIF for her work-related accident. (Docket No. 132 at 17.) On November 17, 2006, Jiménez-Rosado asked Pabón-Ramírez for the original appointment card issued by the SIF, regarding her next appointment scheduled for November 21, 2006. She had provided a copy but not the original. (Docket No. 132 at 17-18.) Pabón-Ramírez called Jiménez-Rosado "obstinate." When Jiménez-Rosado asked what she had just called her, Pabón-Ramírez reiterated that she was "obstinate." (Docket No. 132 at 18.)

On November 20, 2006, Pabón-Ramírez received and discussed with Jiménez-Rosado her second performance appraisal. Pabón-Ramírez refused to sign the performance evaluation, objected in writing to the results, and claimed that she had been evaluated subjectively in some areas. She said that being moved to a cubicle closer to Jiménez-Rosado and having interruptions had caused to her to lose concentration. (Docket No. 132 at 18.) Again, she did not claim age bias or discrimination. (Docket No. 132 at 18.) On November 20, 2006, because she had not met her performance expectations, Pabón-Ramírez received and discussed a plan of action for a period of three months. (Docket No. 132 at 18-19.) On November 20, 2006, Pabón-Ramírez also read, received, and signed a memo regarding improper conduct and attitude in the workplace

for calling her supervisor "obstinate." Pabón-Ramírez objected in writing to the memo and claimed that she was being persecuted. (Docket No. 132 at 19.)

On November 21, 2006, the day after the discussion of her second performance appraisal, Pabón-Ramírez had an appointment scheduled with the SIF for treatment of her ankle. At the appointment, she also reported a second case to the SIF for an alleged emotional condition, since she felt nervous about the hostility against her and because her supervisor evaluated her negatively in front of the Operations Manager. (Docket No. 132 at 19.) She reported to the SIF that she had received a subjective performance evaluation and that she felt harassed and persecuted. She did not mention her age, age bias, or any type of discrimination for a protected category. (Docket No. 132 at 20.) The SIF ordered Pabón-Ramírez to continue treatment for the alleged emotional condition while she continued working for MMM. (Docket No. 132 at 20.)

Pabón-Ramírez says that, in retaliation, Jiménez-Rosado sent her notes under the glass dividing their cubicles, and that Jiménez-Rosado stared at her rabidly with a look saying "te voy a fastidiar" ("I will get back at you") (translation ours). (Docket No. 132 at 23.) Pabón-Ramírez claims that it was retaliation when, on December 5, 2005, Jiménez-Rosado opened a sealed envelope for her orthopedist. Pabón-Ramírez also claims that Jiménez-Rosado opened another sealed envelope on December 8, 2006, for her psychiatrist. (Docket No. 132 at 20.) Pabón-Ramírez told Jiménez-Rosado: "my love, I trusted you would not open the envelope" ("mi amor, es que confié que no ibas a abrir el sobre"). (Docket No. 132 at 20-21.) Jiménez-Rosado asked her not to refer to her in that unprofessional manner. (Docket No. 132 at 21.)

On December 11, 2006, the former Vice President of Human Resources at MMM received a letter dated December 7 from Attorney Elia Erazo-Lozada ("Erazo"). (Docket No. 132 at 21.) The letter reported alleged labor harassment since March 2006 toward Pabón-Ramírez by Jiménez-Rosado, including "mobbing," moral harassment because Jiménez-Rosado scolded Pabón-Ramírez constantly, criticism as to Pabón-Ramírez' work, moving Pabón-Ramírez close to her supervisor, and a low evaluation. The letter requested that at least Pabón-Ramírez should be moved from her working area away from Jiménez-Rosado. The letter referred to Pabón-Ramírez' age, saying that she was the oldest in the working area, and to the illegality of age discrimination under Puerto Rico Act 100. (Docket No. 132 at 21.)

On December 13, 2006, Pabón-Ramírez was moved back to her previous cubicle by the exit of the office. (Docket No. 132 at 21-22.) On December 20, 2006, Pabón-Ramírez had a coaching where she received feedback on her progress from her supervisor. She was provided with copies of all performance-related documents that she requested. (Docket No. 132 at 22.) Pabón-Ramírez did not report any incidents of alleged hostility between January and March 2007. (Docket No. 132 at 22.)

On March 17, 2007, the SIF ordered rest ("descanso") to Pabón-Ramírez for her alleged emotional condition. She was on SIF leave until her resignation on April 2, 2007. (Docket No. 132 at 23.)

On April 2, 2007, Pabón-Ramírez resigned as an employee of MMM, alleging that it was necessary for her health. (Docket No. 132 at 23.) In her resignation letter, Pabón-Ramírez did not refer to her age being an issue, to age bias, to any type of discrimination

for a protected category, or to retaliation. Id. Pabón-Ramírez was not substituted by another employee after her resignation. Instead, the other employees simply absorbed her duties. (Docket No. 132 at 24.)

On April 2, 2007, Pabón-Ramírez filed a charge of discrimination on the basis of age and alleged moral and psychological harassment at the Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources ("ADU"). (Docket No. 132 at 24.) She claimed that on or about November 21, 2006, she "arrived at the conclusion" that her supervisor had been humiliating and harassing her so that she would leave the job because she was the oldest of the group. (Docket No. 132 at 24.)

On August 17, 2007, the SIF discharged Pabón-Ramírez and concluded that she did not suffer an emotional condition related to her work with MMM. (Docket No. 132 at 24.) On February 23, 2012, Lourdes V. Gandarilla, an attorney from the Bureau of Legal Affairs of the Puerto Rico Department of Labor, concluded, based on her evaluation of Pabón-Ramírez' file at the ADU, that the facts Pabón-Ramírez alleged did not constitute age discrimination. (Docket No. 132 at 24-25.) On April 3, 2012, the Equal Employment Opportunity commission issued the Dismissal and Notice of Rights adopting the findings of the ADU as to Pabón-Ramírez' age discrimination charge. (Docket No. 132 at 25.)

## II.

## Analysis

Defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  We must decide whether a reasonable jury could find for Pabón-Ramírez in any of her claims when all reasonable inferences from the evidence are drawn in her favor.  See Scott v. Harris, 550 U.S. 372, 380 (2007).  We note that Pabón-Ramírez' attorneys have failed to rely on case law in their motion for summary judgment, which only includes legal citations in several isolated spots to back up their broad propositions.  (See Docket No. 145.)  This is a grave disservice to the client, and does little to advocate for her position.  Attorneys' words do not carry weight unless they are based on legal authority.

**A.  ADEA claim against MMM:  Discrimination and Retaliation**

   **1.  Discrimination**

The Age Discrimination in Employment Act (ADEA) prohibits an employer from discriminating against any individual "because of such individual's age."  See 29 U.S.C. §§ 621- 634.  Plaintiffs must "establish that age was the 'but-for' cause of the employer's adverse action."  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009) (internal citation omitted).  Any plaintiff who lacks "smoking gun" evidence must prove her case by using the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, the plaintiff must establish a prima-facie case of employment discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  For an ADEA claim, this means the plaintiff must show that: "1) he was at least 40 years old at the time he was fired; 2) he was qualified for the position he had held; 3) he was fired, and 4) the employer subsequently filled the position, demonstrating a continuing need for

the plaintiff's services." Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 (2009) (internal citation omitted). Pabón-Ramírez cannot show these necessary elements.

The parties do not dispute that Pabón-Ramírez was at least forty years old at the time of the incidents. Neither do they dispute that she was qualified for the position. (See Docket Nos. 131, 132.) However, they disagree about whether Pabón-Ramírez was fired. (See Docket Nos. 131, 132, 145, 146.) Importantly, Plaintiff admitted that the employer did not subsequently fill her position, which defeats the claim. (Docket No. 132.)[3]

Pabón-Ramírez alleges that she was constructively discharged. She argues that this was a constructive resignation because "[i]t was not Plaintiff's **personal decision** to make her constructive **resignation**. She was advised to do so by third persons and medical professionals not related to her work." (Docket No. 145 at 8.) However, that is not what is legally required to prove a constructive discharge. "To prove constructive discharge, a plaintiff must usually 'show that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign. Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003) (citation omitted). "It is not enough that a plaintiff suffered 'the ordinary slings and arrows that workers routinely encounter in a hard, cold world.'" Id. (citation omitted). In a similar First Circuit case, a plaintiff's letters of resignation did not allege discriminatory conduct based on age, but mentioned "generally that [plaintiff] found [her supervisor's] managerial style to be troublesome," and the Court held that that did not show

---

[3] This was stated in the Defendants' Statement of Facts. As we wrote *supra*, because Plaintiff did not deny or qualify any of Defendants' statements of fact, we deem them all as admitted.

'harassment so severe and oppressive that staying on the job while seeking redress…is 'intolerable.'" De La Vega v. San Juan Star, Inc. 377 F.3d 111, 118 (2004).

In this case, Pabón-Ramírez alleges that Jiménez-Rosado constantly supervised, corrected, and coached her.  (Docket No. 132 at 12.)  She also objected to being moved close to Jiménez-Rosado, saying that interruptions by Jiménez-Rosado caused her to lose concentration.  (Docket No. 132 at 12, 18.)  She says that Jiménez-Rosado was not friendly with her, and that if she had questions or doubts, she had to stand up and wait for Jiménez-Rosado to finish what she was doing before asking for help.  (Docket No. 132 at 16-17.)  She also claimed that Jiménez-Rosado sent her notes under the glass dividing their cubicles, and that Jiménez-Rosado stared at her "rabidly" with a look that said "te voy a fastidiar" ("I will get back at you") (translation ours).  (Docket No. 132 at 23.)  She alleges that Jiménez-Rosado asked her for her original appointment card for the SIF, even though she had previously provided a copy of the card.  (Docket No. 132 at 17-18.)  She claimed that she was being persecuted when she received a low performance evaluation and a disciplinary memo for calling her supervisor, Jiménez-Rosado, "obstinate."  (Docket No. 132 at 19.)  Pabón-Ramírez claims that she felt nervous due to hostility against her and because her supervisor evaluated her negatively in front of the Operations Manager.  (Docket No. 132 at 19.)

We find that no reasonable jury would see this as a constructive discharge.  Pabón-Ramírez has not shown "that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." Lee-Crespo, 354 F.3d at 45 (internal citation omitted).  Rather, it seems that she has merely alleged that

she suffered "the ordinary slings and arrows that workers routinely encounter in a hard, cold world." Id. (internal citation omitted).  Her inability to prove this element is itself enough to defeat her prima-facie case of age-based discrimination.  See Thermo King de Puerto Rico, Inc., 585 F.3d at 447.

Even if Pabón-Ramírez had shown that she was constructively discharged, she would have been required to show that "the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services."  Thermo King de Puerto Rico, Inc., 585 F.3d at 447.  However, Pabón-Ramírez was not substituted by any other employee after her resignation.  Instead, the other employees simply absorbed her duties. (Docket No. 132 at 24.)[4]  For this reason as well, Pabón-Ramírez cannot show a prima-facie claim of age-based discrimination.  We grant dismissal of this claim

**2.  Retaliation**

It is also illegal for an employer to retaliate against an individual for opposing age-based discrimination.  See 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees…because such individual…made a charge…under this chapter"); See e.g., Ramirez Rodriguez v. Boehringer Ingelheim 425 F.3d 67, 84 (1st Cir. 2005).

If there is no direct evidence of retaliation, our analysis of the claim is similar to that under the McDonnell Douglas framework.  First, the plaintiff must make a prima-facie showing that "(i) he engaged in ADEA-protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between

---

[4] This was stated in the Defendants' Statement of Facts.  As we wrote *supra*, because Plaintiff did not deny or qualify any of Defendants' statements of fact, we deem them all as admitted.

the protected conduct and the adverse action." Ramirez Rodriguez, 425 F.3d at 84 (internal citation omitted).

ADEA-protected conduct occurs when a person,

> has opposed any practice made unlawful by [29 USC § 623, which prohibits age discrimination], or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 USC § 623(d).  To argue that Pabón-Ramírez engaged in ADEA-protected conduct, her counsel writes that "For the sake of argument, the Plaintiff got **engaged in a protective activity** with her internal grievance to Mrs. Michelle Ramirez." (Docket No. 145 at 16.)  However, her letter to Ramírez on September 16, 2006, did not allege any discrimination based on age. (Docket No. 132 at 12.) Therefore, it was not ADEA-protected conduct.

Counsel for Pabón-Ramírez also argues that it was ADEA-protected conduct when her attorney, Erazo, wrote a letter to the Human Resources Department of MMM. (Docket No. 145 at 16.) That letter did refer to Pabón-Ramírez' age. It stated that

> Mrs. Pabon is 56 years old.  In other words, she is one of the eldest if not the eldest employee in her work area.  The harassment, disdain, humiliation and intimidating exerted by Mrs. Jimenez is only against Mrs. Pabon.  Said acts are illegal and punishable under the following laws:  Law 100 of June 30, 1959 – Law against Discrimination at the Workplace and Age Discrimination.  Law 115 of December 20, 1991 – law on Retaliation against the Employee.

Docket No. 149-26 at 3.  Therefore, this qualifies as protected activity.

However, next Pabón-Ramírez must show that she was "thereafter subjected to an adverse employment action" Ramirez Rodriguez 425 F.3d at 84 (internal citation omitted). Materially adverse actions include any mistreatment that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). To support this claim, counsel for Pabón-Ramírez states that Jiménez-Rosado "scold[ed] her badly, humiliating her […] **in front of the whole group**" and that Jiménez **"got on her high horse**." (Docket No. 145 at 19.) We do not believe that a reasonable jury could find that this would dissuade a reasonable worker from making or supporting a charge of discrimination. Therefore, we grant dismissal of Pabón-Ramírez' claim of retaliation.

**B.  Law No. 100 claim against MMM and Jiménez-Rosado (29 L.P.R.A. § 146)**

Pabón-Ramírez alleges violations of parallel rights afforded by the Puerto Rico Civil Code, specifically Law No. 100. (Docket No. 145.) This is "the Puerto Rico equivalent of the federal ADEA, providing for civil liability in age discrimination actions." De La Vega v. San Juan Star, Inc., 377 F.3d 111, 119 (1st Cir. 2004) (internal citation omitted).

We have discretion to decline supplemental jurisdiction over the remaining Commonwealth law claims, since we have dismissed all of the claims over which we have original jurisdiction. See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)("if the federal law claims are dismissed before trial…the state claims should be dismissed as well.") In exercising our discretion under § 1367(c), we must consider the issues of "judicial economy, convenience, fairness, and

comity." Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003). Having considered these factors, and in light of the record, we decline to exercise supplemental jurisdiction over Pabón-Ramírez's Commonwealth law claims, and we dismiss them without prejudice of local court litigation.

### III.

### Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 131) is **GRANTED**. Pabón-Ramírez' federal law claims are **DISMISSED WITH PREJUDICE**. Pabón-Ramírez' Commonwealth law claims are **DISMISSED WIHOUT PREJUDICE OF LOCAL COURT LITIGATION**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 19th day of June, 2014.

                                        S/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        U. S. DISTRICT JUDGE